## McDONOUGH v. HARTFORD FIRE INS. CO.

No. 124.

District Court, E. D. Louisiana.

Sept. 30, 1940.

J. Elton Huckaby, of Baton Rouge, La., and Snyder & Sevier, of Tallulah, La., for plaintiff.

MacDougald, Troutman & Arkwright and Dudley Cook, all of Atlanta, Ga., and Lemle, Moreno & Lemle, of New Orleans, La., for defendant.

BORAH, District Judge.

This is an action by Pat McDonough against the Hartford Fire Insurance Company to recover the proceeds of a policy of inland marine insurance, together with statutory penalties and attorneys' fees. The material facts are these:

On July 18, 1938, plaintiff was lawfully engaged in the retailing of liquor at Tallulah, Louisiana. At the same time and throughout the period involved in this controversy plaintiff was also a member of two separate co-partnerships that were unlawfully engaged respectively in the wholesale distribution of liquor in Jackson and Vicksburg, Mississippi. The sale of liquor both at wholesale and retail, its possession and its transportation into Mississippi is prohibited. Mississippi Code of 1930, Annotated, Secs. 1974, 1976, 1979 and 2003.

On the day aforementioned plaintiff, by written application, obtained from Gregg & McKenzie Insurance Agency, Inc., of Monroe, Louisiana, a policy of inland marine insurance, insuring liquor, wine, etc., that might be transported in a described truck and semi-trailer, against loss by named hazards including, by endorsement, loss by theft within a radius of five hundred miles of the place of origin. In the application which plaintiff was required to file he gave his business at "Retail Liquor Dealer" of wines and whiskey, and his place of business as Tallulah, Louisiana, and stated that the route over which the whiskey was to be transported was "Tallulah, La. to Cairo, Ill. via Jackson, Miss., Memphis and Jackson, Tenn."

Gregg & McKenzie Insurance Agency, Inc., hereinafter called Gregg & McKenzie, was the local agent of the American Central Insurance Company and the Hartford Fire Insurance Company, and the policy which plaintiff applied for was issued by the American Central Insurance

Company. For reasons not satisfactorily appearing of record this policy was cancelled at plaintiff's request within thirty days from the date of its issuance and before any liquor covered by the policy was transported.

On October 1, 1938 plaintiff, who was then at his home in Tallulah, applied to Gregg & McKenzie for the immediate issuance of what he termed a renewal of the former policy. He wanted the same type of insurance, covering the same risks he had formerly applied for and thought the policy would be issued in the same company and that the original signed application would serve as the application upon which the policy would issue. The application was made over the telephone and before Gregg and McKenzie could secure another written application as plaintiff wanted the policy issued in haste. At no time prior to October 4, 1938, the date of the issuance of this policy, and up to and including October 25, 1938, the date of the loss, did Gregg & McKenzie have any knowledge that plaintiff was unlawfully engaged in transporting whiskey into the state of Mississippi for sale. Relying, as plaintiff intended that they should do, upon the representations made in the original signed application, Gregg & McKenzie took the matter up with the Hartford Fire Insurance Company with the request that they issue a policy to cover. They furnished their principal with a copy of the application which was signed by plaintiff in July and it was upon the faith of the facts therein stated that the policy in suit was issued.

After applying for this insurance, plaintiff left his home in Tallulah and went to Cairo, Illinois, for the purpose of purchasing a cargo of liquor. Before leaving he requested Gregg & McKenzie to wire him at Cairo whether the policy would be issued, and his explanation of this request was that he was making arrangements for the purchase of liquor and he was anxious to know if he could get the policy. On October 4, 1938, plaintiff received telegraphic advice that the policy would be issued. Thereafter he sent the motor truck and semi-trailer identified in the policy with three of his employees to Cairo to transport the cargo of liquor which he subsequently purchased from the Cairo Distributing Company, Inc., for the price of $6,083.59. On the night of October 24, 1938, while proceeding south to destination and on reaching a point near Ripley, Tennessee, the truck, trailer and merchandise were forcibly seized by highway robbers. On the morning of October 25, 1938, at the hour of 6:09, Mason, who was in charge of the truck, telephoned to plaintiff from Ripley advising him that the truck had been hijacked. During the course of this telephone conversation plaintiff, who was then at the home of his partner, Seaney, in Jackson, Mississippi, instructed Mason to notify the insurer of the loss and gave Mason the number of the policy and the number of the truck. In his pre-trial deposition plaintiff swore that he received this message from Mason at his home in Tallulah, and that he was able to give Mason an immediate description of the policy even though same was in the bank in Monroe because a statement containing this information was "possibly" in his desk nearby. Later when the testimony of employees of the telephone company was taken the fact was definitely established that plaintiff was at the home of his partner in Jackson, Mississippi, when he received the call from Mason. At the trial plaintiff admitted that he testified falsely in his deposition, that he was actually in Jackson, that he did not have the policy with him and that he did not know where he secured the information that he gave to Mason over the telephone. The significance of this contradictory testimony is apparent. It shows that plaintiff had a clear conception of the import of his conduct. Plaintiff no doubt realized that men do not ordinarily in the course of human conduct walk around with insurance policies in their pockets in the absence of some compelling reason and there can be slight doubt but that he denied his presence in Jackson with the policy in order to avoid the natural deduction that he was expecting the loss. Then when confronted with the records of the telephone company there was no alternative and he was compelled to admit the falsity of his previous testimony with all the implications which flow from that admission.

The evidence in this case shows that plaintiff began running liquor into Mississippi as early as January 20, 1933. At first it was trucked in from Louisiana, then from Florida and later from Kentucky and Illinois. Between August, 1937, and October 24, 1938, plaintiff trucked liquor into the state of Mississippi at the rate of

about one load a week, none of which was covered by an insurance policy. The liquor which was hijacked on October 24, 1938, was the only liquor owned by plaintiff that was ever covered by a policy against theft. Prior to the time of the hijacking at Ripley, plaintiff had never trucked a cargo of liquor into Louisiana from Illinois or Kentucky. In the answer it is charged that plaintiff was at war with a named bootlegger who operated in the state of Mississippi and that the policy in suit was secured because of a threat of hijacking by this named individual. While no direct evidence has been offered to support this charge the circumstances clearly indicate that plaintiff knew of some reason that made it unsafe for him to transport this particular cargo of liquor. Having in mind the nature of plaintiff's operations and the fact that he had throughout the years transported innumerable cargoes of liquor safely and without fear of loss it is inconceivable that he should suddenly and without reason have become so cautious in his business that he would not buy another load of liquor for transportation unless he could secure a policy protecting him against theft of the entire cargo. Men do not suddenly change their business methods in the absence of some impelling reason. The haste with which plaintiff sought the issuance of the policy, his anxiety in requesting that he be advised if the policy would issue before he purchased the liquor, the subsequent hijacking, his conduct on the morning of the loss and the fact that he was in Jackson on the morning of the loss, coupled with the denial, all point irresistibly to the fact that plaintiff knew of some circumstance which led him to believe that a loss was imminent.

The evidence shows that plaintiff was engaged as a retail liquor dealer at Tallulah; that he had no permit to sell liquor at wholesale in Louisiana and since he was not a common carrier and had not paid the tax provided by law he had no right to transport this liquor by truck and consequently the liquor was subject to seizure, forfeiture and sale by the State, Act 15 of the Legislature of Louisiana for the year 1934. In addition the evidence shows that plaintiff had no basic permit from the Federal Alcohol Administration. It is therefore clear that this cargo of liquor could not be brought into Louisiana or Mississippi lawfully. It is equally clear that this cargo was being unlawfully transported through Tennessee, Sections 11217 and 11218 of the 1932 Code of Tennessee, and was being transported in violation of the Webb-Kenyon Act of August 27, 1935, U.S.C.A. Title 27, Section 122, and the Liquor Enforcement Act of 1936, U.S. C.A. Title 27, Chapter 9, Section 223. Plaintiff claims the ultimate destination of this cargo was Tallulah, though he admits that when the liquor left Cairo it was not destined to Tallulah but destined to Vicksburg where the driver was to receive instructions as to what further was to be done with the cargo. Plaintiff knew he had no authority from the State to bring this load of liquor from Vicksburg to Tallulah, but he says he was going to find out when the liquor got to Vicksburg whether he could bring it in on his own truck or bring it in on a common carrier, and he intended at that late date to apply to the Collector's office in Baton Rouge for a wholesale license. For reasons too obvious to again mention this court is unwilling to disregard every known fact and accept the unsupported statement of plaintiff that the ultimate destination of this cargo was Tallulah. On the contrary, I am persuaded that plaintiff's intentions with respect to this cargo was to handle same in precisely the same fashion that he had handled other liquors imported into Mississippi during the past fourteen months.

The policy in suit contains this provision: "This entire policy shall be void if the assured or his agent has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the assured or his agent shall make any attempt to defraud this company either before or after the loss."

The policy also contains a provision restricting the coverage to "lawful goods and merchandise."

The evidence shows that plaintiff's applications for insurance were handled by Mr. Mouk, an employee of Gregg & McKenzie. That Mr. Mouk as an experienced insurance man knew that the origin and destination of a truck cargo covered by inland marine insurance was of prime importance to the underwriter and that every application for such insurance required the furnishing of that information. Stockton, who was in charge of defendant's inland marine department,

testified that in this type of insurance an insurance company relies almost entirely upon the representations of the assured, having in mind that the nature of the assured's representations as to his equipment, business affiliations and associations have a great deal to do with the risk involved. With respect to liquor cargoes he stated that it is of the utmost importance to know the routes and principal cities between which the assured is to operate his truck or trucks because the defendant company is unwilling to insure any cargoes that are transported into a so-called dry state.

The paramount issue in this case is whether or not a material misrepresentation induced the making of the contract. The issue thus presented is one of fact and the proof with respect thereto is clear and convincing. It is not believed that anyone will dispute the fact that when plaintiff said he was a retail liquor dealer lawfully engaged in business at Tallulah, he stated only a partial or half-truth and misrepresented to the defendant his true occupation and the extent of the risk which it was undertaking. In his testimony plaintiff admitted knowledge of the fact that the transportation of liquor of a bootlegger was subject to a greater danger of theft than that of lawful liquor. Knowing that this circumstance would influence the insurer, good faith required plaintiff to disclose his real occupation and his failure to do so was, therefore, the misrepresentation of a material fact, and the concealment of such a fact as would have induced the underwriters to reject the offer to enter into the contract of insurance. Plaintiff, therefore, not only misrepresented and concealed the facts of his occupation and of his operations but he concealed the fact that this cargo was destined to Mississippi and that he had taken out this policy because of some danger of theft known to him. These facts were all material to the risk and had they been disclosed defendant would not have issued its policy.

In my judgment defendant has fulfilled its burden and clearly proved the misrepresentation which induced the making of the contract. It follows that no contract between plaintiff and defendant ever came into being because there had never been a meeting of the minds. But assuming that defendant had not proved the misrepresentation and that the policy in consequence was enforceable the loss would not come within the coverage because the liability of the insurer was restricted to lawful goods.

This action was tried by the court without the intervention of a jury; accordingly, in compliance with Rule 52 of the Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, the court makes the following findings of fact:

On July 18, 1938, plaintiff was lawfully engaged in the retailing of liquor at Tallulah, Louisiana. At the same time plaintiff was also a member of two separate co-partnerships that were unlawfully engaged respectively in the wholesale distribution of liquor in Jackson and Vicksburg, Mississippi.

On July 18, 1938, plaintiff by written application obtained from Gregg & McKenzie Insurance Agency, Inc., of Monroe, Louisiana, a policy of inland marine insurance, insuring liquor, wine, etc., that might be transported in a described truck and semi-trailer, against loss by named hazards including, by endorsement, loss by theft. In the application which plaintiff was required to file he gave his business as "Retail Liquor Dealer" of wines and whiskey, and his place of business as Tallulah, Louisiana, and stated that the route over which the whiskey was to be transported was "Tallulah, La. to Cairo, Ill., via Jackson, Miss., Memphis and Jackson, Tenn."

Gregg & McKenzie was the local agent of the American Central Insurance Company and the Hartford Fire Insurance Company and the policy which plaintiff applied for was issued by the first named company. For reasons not satisfactorily appearing of record this policy was cancelled at plaintiff's request within thirty days from the date of its issuance and before any liquor covered by the policy was transported.

On October 1, 1938, plaintiff, who was then in Tallulah, applied to Gregg & McKenzie for the immediate issuance of what he termed a renewal of the former policy. He wanted the same type of insurance, covering the same risks he had formerly applied for and thought the policy would be issued in the same company and that the original signed application would serve as the application upon which the policy would issue.

At no time prior to the date of the issuance of this policy, and up to and including the date of the loss, did Gregg & McKenzie have any knowledge that plaintiff was un-

lawfully engaged in transporting whiskey into the State for sale.

Relying, as plaintiff intended that they should do, upon the representations made in the original signed application, Gregg & McKenzie took the matter up with the Hartford Fire Insurance Company with the request that they issue a policy to cover. They furnished their principal with a copy of the application which was signed by plaintiff in July, and it was upon the faith of the facts therein stated that the policy in suit was issued.

Plaintiff requested Gregg & McKenzie to wire him at Cairo whether the policy would be issued and his explanation is that he was making arrangements for the purchase of liquor and he was anxious to know if he could get the policy.

On October 4, 1938, plaintiff received telegraphic advice that the policy would be issued.

On October 24, 1938, plaintiff purchased a cargo of liquor from the Cairo Distributing Company, Inc.

On the night of October 24, 1938, while proceeding south to destination and on reaching a point near Ripley, Tennessee, plaintiff's truck, trailer and merchandise were forcibly seized by highway robbers.

The circumstances clearly indicate that plaintiff knew of some reason that made it unsafe to transport this particular cargo of liquor and the court so finds.

The cargo of liquor in question was destined for Mississippi and not for Tallulah, Louisiana.

The cargo in suit could not be brought into Louisiana or Mississippi lawfully, and at the time of the loss was being unlawfully transported through Tennessee.

The policy contains this provision: "This entire policy shall be void if the assured or his agent has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the assured or his agent shall make any attempt to defraud this company either before or after the loss."

The policy also contains a provision restricting the coverage to "lawful goods and merchandise".

Defendant's agent knew that the origin and destination of a truck cargo covered by inland marine insurance was of prime importance to the underwriter and that every application for such insurance required the furnishing of that information.

In this type of insurance an insurance company relies almost entirely upon the representations of the assured, having in mind that the nature of the assured's representations as to his equipment, business affiliations and associations have a great deal to do with the risk involved. That with respect to liquor cargoes it is of the utmost importance to know the routes and principal cities between which the assured is to operate his truck or trucks because the defendant is unwilling to insure any cargoes that are transported into a so-called dry state.

I find as a fact that when plaintiff said he was a retail liquor dealer lawfully engaged in business at Tallulah, he stated only a partial or half truth and misrepresented to the defendant his true occupation and the extent of the risk which it was undertaking.

Plaintiff knew that the transportation of liquor of a bootlegger was subject to a greater danger of theft than that of lawful liquor.

Plaintiff, therefore, not only misrepresented and concealed the facts of his occupation and of his operations but he concealed the fact that this cargo was destined to Mississippi and that he had taken out this policy because of some danger of theft known to him. These facts were all material to the risk and had they been known, defendant would not have issued its policy.

### Conclusions of Law.

The defendant has fulfilled its burden and clearly proved the misrepresentation which induced the making of the contract.

No contract between plaintiff and defendant ever came into being because there had never been a meeting of the minds.

The policy was void ab initio because of misrepresentation.

Even if the policy was enforceable because there had been no misrepresentation, the loss would not come within the coverage.

A contract of insurance covering the prohibited transportation of liquor being in aid of and an encouragement to law violations, is against public policy and not enforceable. Benton v. Hope & Tally, 19 La. Ann. 463; Couch Cyclopedia of Insurance Law, Sections 1115 and 1116.

Where as here the contract grows immediately out of and is directly connected with the transportation of unlawful liquor, a court of justice will not lend its aid to enforcement.

There should be judgment in favor of defendant and against plaintiff, dismissing plaintiff's suit with costs, and the clerk is directed to enter judgment accordingly.